## BUETTNER v. HANSEN.
### No. 10.

District Court, D. Maryland.

March 8, 1939.

W. ·LeRoy Ortel, of Baltimore, Md., for plaintiff.

W. Giles Parker and Daniel E. Klein, both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The rule of court requires me to make a finding of fact in non-jury cases, including this one.

I find that both the plaintiff and defendant are citizens of Maryland and residents of the City of Baltimore, and both of them are and have been for quite some years, in one case, at least, thirty years or more, carpenters, builders and contractors. I find that the plaintiff, Mr. Kilian H. Buettner, received a patent dated August 24, 1937, No. 2,091,065, for an extension door for garages and other buildings. The nature of this door, or the purpose that it is intended to serve, and the reason for the design, is fairly well explained in the specification and description of the patent. The only claim that was allowed reads as follows:

"A garage, or other building, having an opening therein, a plurality of hinged doors adapted to close the said opening either on a line with the building or in an extended position, and a canopy extending from said building above said opening, and adapted to close the space above the doors when they are in the extended position."

The only novelty or evidence of invention of any kind that is existent in this claim is in the phrase "a plurality of hinged doors adapted to close the said opening either on a line with the building or in an extended position."

Now, the local occasion for a device of this character is that a good many building lots in Baltimore City, in the older portion of the City, are only fourteen or fifteen feet wide, but the whole lot on which the building stands usually extends in the rear to a depth of considerably more than the length of the building itself. This creates something in the nature of a vacant or open lot in the rear of the house, and where the house is situated on the corner of two intersecting streets, the rear of the lot not built on abuts on the side street and has a depth measuring from the side street across the width of the lot only fourteen or fifteen feet. Now, many of such lots in Baltimore City were years ago improved by the construction of single or double garages thereon, but the garages had a depth in many cases of not more than twelve, fourteen, or fifteen feet. The length over all of the average automobile has now increased and is apt to be greater than this length of twelve to fifteen feet. The result is that you can not get the automobile completely within such a garage, the rear end of the automobile will stick out over the building line. Now, Baltimore City does not permit that condition to exist. And it does not permit the building out of the structure over the building line. But under the present city ordinances and regulations with respect to buildings, it is possible for the property owner under certain conditions to obtain so-called permits for temporary obstructions beyond the building line, and it is assumed that when an automobile is stabled in a garage at night and the doors are closed, if the doors themselves extend somewhat over the building line not more than, say, two feet, then that obstruction of the pavements or street is regarded as temporary and is permitted by the City on due application.

That is the reason that there was some device necessary for an extension of the length of an already-built garage, or, indeed, of a newly-built garage which would be only, say, fourteen feet in length, and too short to include one of the average modern cars.

The plaintiff as a contractor and builder has built a great many garages and he saw the convenience of adapting these short garages in such a way as to give an extension to them when the automobile was housed· and not to violate the ordinary building conditions in Baltimore City which prohibited permanent extensions over the building line. He, therefore, devised a plan of having what you might call folding bay window garage doors. Indeed, the

purpose of plaintiff's structure is, in many respects, very much like the bay window of a house, for certainly when it is in position extended it is very much like a bay window. Of course, it differs from the ordinary bay window in that it is susceptible of being made flush with the outer wall of the building. But in its extended position it is sort of folded out and around the protruding end of the automobile.

The particular mechanical arrangement by which this is accomplished is by virtue of double-hinged doors, and there are four panels to the doors, and the side doors which are more narrow than the middle doors are hinged to the door jamb, and the small, narrow door is also hinged to the larger or wider middle door, and that is so on each side of the double doors. The result is you get, according to the plaintiff's description of his claim, a plurality of hinged doors adapted to close the said opening either on a line with the building or in an extended position.

Now, the defendant's structure is, of course, designed to accomplish the same general purpose, with regard to temporary extensions of the length of the garage when housing an automobile which is too long for the garage without the extension. But the defendant accomplishes the same result in quite a different mechanical and carpentering way. He does not have anything that resembles the ordinary bay window, and the small panels of its four doors are themselves not hinged to the door jamb but are suspended and their weight is carried on what is called a concealed track, and these panels of the defendant's door run in and out on this track so that there is something of a telescopic action in the extension or the pushing in, so that the doors will be flush with the building line when the automobile is not housed.

I find, as a matter of fact, that that is quite a different mechanical arrangement from plaintiff's device. It operates in a different way. It does not have the side doors on an angle when the doors are opened in an extended position. The weight is suspended from the so-called canopy, and the doors travel in and out along this track. Furthermore, they are capable of adjustment in actual extended length for the housing of an automobile.

Technically the defendant's structure does not read upon the plaintiff's claim in that the defendant's structure does not have a plurality of hinged doors adapted to close the side opening thereof on a line with the building or in an extended position. The defendant uses hinges only between the narrow side panels of the door and the wider door portion, but the side panels are not hinged to the jamb in the ordinary way. The movement is on this concealed overhead track, something like the way a pulley runs on a track or a trolley runs on a track. I find that this arrangement of the defendant is distinctly different in mechanical operation and construction from the plaintiff's device.

Now, the contention of the plaintiff is that under the patent law the defendant's different device constitutes what is called a substantial equivalent of the plaintiff's device. I realize, of course, that what is or what is not a substantial equivalent, when you are dealing with two different structures, one which is patented and the other is alleged to infringe it, is a matter which depends, in the last analysis, on the point of view and judgment of the particular judge who is deciding the matter. There are, of course, some objective aids we get from decided cases, some general principles; but finally the decision of the question depends upon the judgment of the particular judge who is deciding the case.

It is true, of course, that where you have a patent which is a very new thing in the art, which represents a distinct advance over anything which has ever been conceived before, where the device fills a very great need which has long been experienced in the art, then imitators of the device by different minor mechanical arrangements will often be held to infringe. In other words, the words "substantial equivalent" as applied to a situation like that are given a very wide and liberal construction and application. On the other hand, where the patent which is set up is one which is a very narrow one, if valid at all, and merely accomplishes a purpose kindred to what has been well known in the art for many years, and is an accomplishing of the same purpose but by different mechanical means, it is not held to fall within the doctrine of substantial equivalents. Or, in other words, in the latter case the range of equivalents is very much narrower than in the former. Or, putting it in other words, the doctrine of substantial equivalents is narrower, closely applied to the latter case. I think that this

particular situation falls within the latter case and not in the former.

 It is not necessary for me to decide in this case, as the defendant's answer sets up, that the plaintiff's patent is invalid because I find there is no infringement. If I were forced to decide the question of the validity of the plaintiff's patent, I should have very grave doubts indeed as to its validity. Very much may be said in favor of the proposition, that what the plaintiff has invented is merely the display of common experience and mechanical knowledge, the kind of thing that I would think almost any competent contractor and builder, who has been a practical carpenter, would be able to devise if any person asked him to build something of that nature. It does, of course, show competent carpentering skill. But I would doubt very much whether the use of a plurality of hinges in what generally may be described as a folding door, a thing that has been known for ages in the field of building and carpentering artisanship, could be described in the language of the patent law as a new and useful improvement. The only thing new about this situation is the new utility for a bay window extension for a door, and when the need for it arose, it is perfectly clear that both parties were able to solve it from their prior experience although in an entirely different way. I doubt very much whether such an arrangement as you have here, an extension of the door for temporary purposes and a door otherwise when not needed in an extended position to be flush with the line of a building, is really new. It has a special application, of course, in Baltimore City with regard to garages such as plaintiff described, but I doubt very much whether it is a wholly novel thing as applied to other situations. However, I am not called upon in this case, and there is no necessity, to decide the plaintiff's patent is invalid. There is always a presumption in favor of the validity of a patent which is granted by the Patent Office. But assuming it is valid, it has to receive a very narrow construction, indeed, and it must be very definitely and strictly limited to the particular kind of an arrangement conceived and constructed by the plaintiff, the essential element of which is the feature of plurality of hinged doors. Now, that essential feature is not found in the defendant's device. Therefore, I am very clearly of the opinion that there is no infringement in this case.

Consequently, my conclusion of law is that the plaintiff's action must be dismissed, on the ground that the defendant structure does not infringe the plaintiff's device.

I find also that the defendant has made only five structures according to his plan or device, at a very small profit, I think $12 per structure.

Plaintiff's action will be dismissed upon appropriate order being presented, and the costs, of course, will have to be paid by the plaintiff.

If plaintiff should wish to take an appeal in the case, I may go into the matter in more detail and write a more extended, formal opinion. But I think what I have orally said will otherwise serve as a sufficient finding of facts in the case. As the patent is not held invalid, there is no necessity, of course, of making any adjudication in that respect.

 The decree in the case, or judgment, as we now call it under the new rules of federal civil procedure, 28 U.S.C. A. following section 723c, should simply be a dismissal of the plaintiff's action, with prejudice, as we call it; that is to say, it acts as an estoppel against any further suit by plaintiff against defendant in this case for the same cause of action.